IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG DIVISION

| | | |
|---|---|---|
| ARIELLE JORDAN, a/k/a QUEEN, et al., | ) | |
| | ) | Case No. 3:11-CV-0019 |
| On Behalf of Themselves & | ) | |
| All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Judge John Preston Bailey |
| – vs – | ) | |
| | ) | |
| ENTERTAINMENT OF THE EASTERN | ) | |
| PANHANDLE, d/ b/a THE LEGZS | ) | Answer of the Defendants & Counterclaims |
| CLUBS, et al. | ) | Of Defendants Entertainment of the Eastern |
| | ) | Panhandle, Inc. & Legz Morgantown, Inc. |
| Defendants. | ) | |

Now come the Defendants, Entertainment of the Eastern Panhandle, Inc. ("EEP"), the Legz

Club, Inc. ("LCI"), Legz Morgantown, Inc. ("LMI"), and Troy W. Ericson ("Ericson"), by and

through undersigned counsel, and each of them, who submit this Answer to the Complaint of the

Plaintiffs.

**– FIRST DEFENSE –**

1.     These Answering Defendants, and each of them, admit that the Plaintiffs have filed

a Complaint which purports to state claims and endeavors to seek recovery under the Fair Labor

Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the West Virginia Wage Payment and

Collection Act, W.Va. Code § 21-5-1 et seq. ("WPCA"), as alleged in Paragraph 1 of the Complaint,

but deny that the Plaintiffs are entitled to any recovery.

**JURISDICTION & VENUE**

2.     These Answering Defendants, and each of them, admit that this Court has jurisdiction

to hear claims under the FLSA pursuant to 28 U.S.C. § 1331, as alleged in Paragraph 2 of the

Complaint.

3.      These Answering Defendants, and each of them, deny that this Court has, or should exercise, supplemental jurisdiction over the WPCA claims asserted by the Plaintiffs and specifically deny that those claims are so related to their FLSA claims as to form a part of the same case or controversy, as alleged in Paragraph 3 of the Complaint.

4.      Without admitting that the supplemental jurisdiction of this Court has been properly invoked as to the WPCA claims asserted by the Plaintiffs, these Answering Defendants, and each of them, admit that venue is proper in this Court, as alleged in Paragraph 4 of the Complaint.

PARTIES

5.      These Answering Defendants, and each of them, deny for want of sufficient information sufficient to form a belief, the allegations set forth in Paragraph 5 of the Complaint.

6.      These Answering Defendants, and each of them, deny for want of sufficient information sufficient to form a belief, the allegations set forth in Paragraph 6 of the Complaint.

7.      These Answering Defendants, and each of them, admit the allegations set forth in Paragraph 7 of the Complaint.

8.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 8 of the Complaint.

9.      These Answering Defendants, and each of them, admit the allegations set forth in Paragraph 9 of the Complaint.

10.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 10 of the Complaint.

11.     Defendants EEP and LMI admit that they operate night clubs at which food and beverages are served, and erotic dancing is presented as entertainment, but deny that they operate those nightclubs as an enterprise, as alleged in Paragraph 11of the Complaint.

12.     The Answering Defendants, and each of them, admit that Troy W. Ericson was and is an officer of Defendants EEP and LMI, but deny that he holds any position in LC, and further deny the present or continuing existence of Legz Martinsburg, as alleged in Paragraph 12 of the Complaint.

13.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 13 of the Complaint.

14.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 14 of the Complaint.

15.     These Answering Defendants, and each of them, deny the implication, set forth in Paragraph 15 of the Complaint, that the Plaintiffs, or either of them, were ever employed by any Defendant herein but, further answering, admit that Defendants EEP and LMI were, at times engaged in commerce within the meaning of the FLSA.

16.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 16 of the Complaint.

17.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 17 of the Complaint.

### STATEMENT OF FACTS

18.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 18 of the Complaint.

19.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 19 of the Complaint.

20.     These Answering Defendants, and each of them, deny each and every allegation set forth in Paragraph 20 of the Complaint, and specifically deny the implication that Plaintiff Jordan had any employment-related job duties, primary or otherwise, or was an employee of Defendants.

21.     These Answering Defendants, and each of them, specifically deny that Plaintiff Jordan was employed by any of them within the meaning of the FLSA and WPCA, and deny for want of information sufficient to form a belief, the remaining allegations set forth in Paragraph 21 of the Complaint.

22.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 22 of the Complaint.

23.      These Answering Defendants, and each of them, deny each and every allegation set forth in Paragraph 23 of the Complaint, and specifically deny the implication that Plaintiff Ruffin had any employment-related job duties, primary or otherwise, or was an employee of Defendants.

24.     These Answering Defendants, and each of them, specifically deny that Plaintiff Ruffin was employed by any of them within the meaning of the FLSA and WPCA, and deny for want of information sufficient to form a belief, the remaining allegations set forth in Paragraph 24 of the Complaint.

25.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 25 of the Complaint.

26.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 26 of the Complaint.

27.      These Answering Defendants, and each of them, deny as written the assertions set forth in Paragraph 27 of the Complaint, but admit that dancers, as independent contractors, were permitted to sign up to perform at the nightclubs operated by the Defendants in one of two shifts on any given evening when independent contractors agreed to present entertainment.

28.     These Answering Defendants, and each of them, deny that the Plaintiffs performed any work duties for which wages were due them, as at all times relevant hereto the Plaintiffs, and each of them, were independent contractors, and further answering the allegations set forth in Paragraph 28 of the Complaint, state that on that basis, no wages were paid to the Plaintiffs.

29.     These Answering Defendants, and each of them, deny that the other exotic dancers performed any work duties for which wages were due them, as at all times relevant hereto the exotic dancers performing in the establishment operated by the several Defendants, and each such dancer, were independent contractors, and further answering the allegations set forth in Paragraph 29 of the Complaint, state that on that basis, no wages were paid to such dancers.

30.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 30 of the Complaint.

31.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 31 of the Complaint.

32      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 32 of the Complaint.

33.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 33 of the Complaint.

34.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 34 of the Complaint.

35.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 35 of the Complaint.

36.      These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 36 of the Complaint.

37.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 37 of the Complaint.

38.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 38 of the Complaint.

39.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 39 of the Complaint.

40.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 40 of the Complaint.

41.     These Answering Defendants, and each of them, deny that the Plaintiffs were employees entitled to receive compensation at an hourly rate at least equal to the minimum wage established under the FLSA, and further answering the allegations set forth in Paragraph 41 of the Complaint state that, on this basis, hourly wages were not paid to them.

42.     These Answering Defendants, and each of them, admit that the Plaintiffs who breached their contractual agreement with the Defendants by arriving late to perform entertainment, which they had committed in advance to perform at a given time and on a given date, were subject to an agreed-upon fee.  Further answering the allegations set forth in Paragraph 42 of the Complaint, the Defendants, and each of them, deny that those charges were routinely collected in fact, deny the implication that such events constituted "being late for work" in the sense an of employee with an assigned shift, and deny the remaining allegations set forth in Paragraph 42 of the Complaint not otherwise expressly admitted here.

43.     These Answering Defendants, and each of them, admit that other independent contractors who broke their contractual agreement with the Defendants by arriving late to perform entertainment, which they had committed in advance to perform at a given time and on a given date, were subject to an agreed-upon fee.  Further answering the allegations set forth in Paragraph 43 of the Complaint, the Defendants, and each of them, deny that those charges were routinely collected in fact, deny the implication that such events constituted "being late for work" in the sense of an employee with an assigned shift, and deny the remaining allegations set forth in Paragraph 43 of the Complaint not otherwise expressly admitted here.

44.     These Answering Defendants, and each of them, admit that they had no written memorialization of the oral agreement under which the Plaintiffs agreed to pay the fees which are mischaracterized as "charges and penalties" in Paragraph 44 of the Complaint.

45.     These Answering Defendants, and each of them, admit that they had no written memorialization of the oral agreement under which other independent contractors agreed to pay the fees which are mischaracterized as "charges and penalties" in Paragraph 45 of the Complaint.

### First Count: FLSA

46.     These Answering Defendants, and each of them, deny that the Plaintiffs, or either of them, has properly stated a claim under the FLSA, as alleged in Paragraph 46 of the Complaint.

47.     These Answering Defendants, and each of them, admit that the Complaint purports to state claims on behalf of other parties similarly situated to the Plaintiffs, but deny the allegation that the Plaintiffs, or either of them, is or was an employee, or so similarly situated to any other employee of the Defendants, or any of them, as to be permitted to bring an action on their behalf within the meaning of 29 U.S.C. § 216(b), as alleged in Paragraph 47 of the Complaint.

48.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 48 of the Complaint.

49.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 49 of the Complaint.

50.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 50 of the Complaint.

51.     These Answering Defendants, and each of them, deny as written the allegations set forth in  Paragraph 51 of the Complaint.

52.     These Answering Defendants, and each of them, deny as written the allegations set forth in  Paragraph 52 of the Complaint.

53.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 53 of the Complaint.

## SECOND COUNT: WPCA

54.     These Answering Defendants, and each of them, deny that the Plaintiffs, or either of them, has properly stated a claim under the WPCA.

55.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 55 of the Complaint.

56.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 56 of the Complaint.

57.     These Answering Defendants, and each of them, admit to having no such authorizations and,  further answering the allegations set forth in Paragraph 57 of the Complaint, deny the claim that such authorizations were required, in that the Plaintiffs were independent contractors and not employees.

58.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 58 of the Complaint, and specifically deny that the Plaintiffs were employees entitled to be paid wages under the WPCA.

59.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 59 of the Complaint, and specifically deny that the Plaintiffs were employees entitled to be paid wages within the periods specified by the WPCA.

60.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 60 of the Complaint.

**WPCA CLASS ALLEGATIONS**

61.      These Answering Defendants, and each of them, admit that the Plaintiffs have characterized their action as stating claims on behalf of themselves and others under the WPCA, but deny that the claims set forth in the Complaint are properly subject to class certification under Federal Civil Rule 23 or that the Plaintiffs have properly alleged the bases for a class action.

62.     These Answering Defendants, and each of them, deny for want of information sufficient to form a belief the allegations set forth in Paragraph 62 of the Complaint.

63.     These Answering Defendants, and each of them, deny for want of information sufficient to form a belief the allegations set forth in Paragraph 63 of the Complaint.

64.     These Answering Defendants, and each of them, deny for want of information sufficient to form a belief the allegations set forth in Paragraph 64 of the Complaint.

65.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 65 of the Complaint.

66.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 66 of the Complaint.

67.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 67 of the Complaint.

68.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 68 of the Complaint.

69.     These Answering Defendants, and each of them, deny the allegations set forth in Paragraph 69 of the Complaint.

70.     These Answering Defendants, and each of them, hereby expressly deny each and every allegation set forth in the Complaint not heretofore admitted, admitted in part, or denied.

**– SECOND DEFENSE –**

The Complaint fails to state a claim upon which relief may be granted.

**– THIRD DEFENSE –**

Some portion of the claims asserted by the Plaintiffs, and each of them, are barred by the applicable statute of limitations.

**– FOURTH DEFENSE –**

The claims asserted by the Plaintiffs, and each of them, are barred by the doctrines of estoppel, laches and/or waiver.

**– FIFTH DEFENSE –**

The claims asserted by the Plaintiffs, and each of them, are barred by the doctrine of accord and satisfaction, settlement and/or payment and release.

**– SIXTH DEFENSE –**

The claims asserted by the Plaintiffs, and each of them, are barred by the doctrine of unclean hands and their failure to do equity.

## – SEVENTH DEFENSE –

At all times relevant hereto, the Defendants, and each of them, acted in good faith and had reasonable grounds to believe that their actions were not in violation of the FLSA, and as such, any claim for liquidated damages against them under the FLSA is either barred outright, or subject to an appropriate reduction.

## – EIGHTH DEFENSE –

The actions of the Defendants, and each of them, did not constitute "willful" violations of the FLSA within the meaning of that Act, and as such, are properly subject – if properly stated at all, which Defendants deny – to a two year, and not a three year statute of limitations.

## – NINTH DEFENSE –

At all times relevant hereto, the Plaintiffs, and each of them, were exempt from the protections of the FLSA as  exempt creative professionals.

## – TENTH DEFENSE –

To the extent that either Plaintiffs was, at any time, an employee of any Defendant – which the Defendants expressly deny – she was a tipped employee who received more than $30.00 each month in tips, pursuant to 29 U.S.C. § 203(t), and thus was only eligible to be compensated at the reduced rate defined by 29 U.S.C. § 203(m).

———————————————

C<small>OUNTERCLAIMS OF</small><br>
– C<small>ERTAIN</small> D<small>EFENDANTS</small> –

Defendants EEP and LMI, for their Counterclaims against the Plaintiffs, and against the putative members of the purported class of similarly situated individuals alleged in the Complaint (hereinafter collectively with the Plaintiffs called "the Entertainers") do hereby state as follows.

**– Counterclaim Parties –**

1.      EEP is, and at all times relevant hereto was a corporation organized and operating under the laws of the State of West Virginia which operates an adult cabaret known as the Legz Club in Martinsburg, West Virginia, at which constitutionally protected dance performances are offered by independent contractors under agreements the terms of which are recited herein.

2.      LMI is, and at all times relevant hereto was a corporation organized and operating under the laws of the State of West Virginia which operates an adult cabaret known as the Legz Club in Morgantown, West Virginia, at which constitutionally protected dance performances are offered by independent contractors under agreements the terms of which are recited herein.

3.      Plaintiff Arielle Jordan "(Jordan") is, and at all times relevant hereto was an adult, a natural person who at various times as late as March 2010 performed as an exotic dancer at the adult cabaret operated by EEP in Martinsburg, West Virginia.

4.      Plaintiff Patrice Ruffin ("Ruffin") is, and at all times relevant hereto was an adult, a natural person who at various times as late as March 2010 performed as an exotic dancer at the adult cabaret operated by EEP in Martinsburg, West Virginia.

-12-

5.      As defined herein, the allegations set forth in the following Counterclaims extend to the Entertainers, which group includes any and all persons deemed to be members of any Plaintiff Class certified in the captioned action, as well as any persons permitted to proceed collectively against the either EEP, LMI or both of them by virtue of being deemed similarly situated to the Plaintiffs or the designated representatives of any Plaintiff Class.

**– Facts Common to Each Counterclaim Count –**

6.      At all times relevant hereto, the Entertainers, and each of them, performed as exotic dancers, who presented constitutionally protected erotic dance performances in the night clubs operated by EEP and LMI (hereinafter collectively "the Club or "the Clubs" as context dictates).

7.      At all time, the Entertainers, and each of them, performed as independent contractors under an agreement with either EEP and/or LMI, under which they were permitted to appear, and agreed to appear in the Club(s) on dates and at times that were mutually agreeable to the Entertainer and the Club(s) in question.

8.      The Entertainers agreed to present and perform erotic dances in the Club(s) directly for the patrons of the establishment, and strictly and solely in exchange for compensation paid directly by the patrons of the Club(s) to the Entertainers in question.

9.      The Entertainers had no job duties and no work responsibilities in the Club(s) other than to present erotic dance performances – as independent contractors and under the terms of their contracts with EEP and/or LMI – on the dates and at the times upon which the Entertainers and the Clubs agreed, and solely in exchange for compensation paid directly by the patrons of the Club(s) to the Entertainers in question.

10.     The Entertainers paid a $10.00 nightly fee to obtain access to, and in exchange for the right to present erotic dance performances within, the facilities offered by the Club(s).

11.     In exchange for this nightly fee, EEP and LMI, through the Club(s), provided the Entertainers with a venue in which to perform, security, dressing facilities, music (which was usually presented by a live disc jockey), the amenities of performing for patrons in an eating-and-drinking establishment, as well as with access to various private and semi-private performance areas in which the Entertainers could present dance performances for small groups of patrons, or single patrons, for a premium fee.

12.     Many of the dances offered by the Entertainers were and are presented on the main stage of the Club(s). These dances are presented in view of patrons generally, and were visible to Club staff as well.  The right to perform these dances, in exchange for whatever gratuities might be offered by appreciative patrons, was and is afforded to the Entertainers in exchange for the $10.00 nightly performance fee described above.

13.     The Entertainers also had and have opportunities to provide various dance performances for patrons of the Club(s),  individually or in small group settings.  These include table side dances, dances in a VIP Champagne Room, and dances in a shower. These opportunities were and are facilitated by the Club(s) in certain ways, discussed below. The Entertainers were and are and free to offer these services to patrons at any rate, above a certain minimum rate, they decide(d) to charge.

14.     EPP, LMI and the Club(s) facilitate these private and semi-private performances in many ways, including by making the availability of these opportunities known to patrons, providing security to the Entertainers, providing the general seating area in which table dances occur, and the private areas in which the champagne and shower dances are performed, ensuring that those areas are clean and available to Entertainers when desired, providing the music to which Entertainers can perform. In exchange for these services, EPP, LMI and the Club(s) charge the Entertainers a fee for each private or semi-private dance they perform, in addition to the $10.00 general performance fee.

15.     As a part of their agreement with the Entertainer EPP, LMI and the Club(s) set a standard, minimum fee, which is the least an Entertainer may charge for providing a private or semi-private dance to patrons.

16.     The Entertainer is free to charge any fee she desires for a private or semi-private dance, so long as it meets the minimum. The Entertainer agrees to pay to the Club(s) a fee for the facilities and additional services they provide in facilitating her presentation of those dances, as described in the preceding paragraphs.

    A.    The minimum fee for a table-side dance is $30.00. The Entertainer agrees to pay $10.00 to the Club(s);

    B.    The minimum fee for a shower dance is $100.00. The Entertainer agrees to pay $30.00 to the Club(s).

    C.    The minimum fee for a champagne dance is $150.00. The Entertainer agrees to pay $75.00 to the Club(s), part of which reimburses the Club(s) for the bottle of champagne provided to the patron during the dance.

17.     In addition to any fees they might receive directly from patrons for these private and semi-private performances, the Entertainers also receive gratuities above and beyond their set fees. These are in addition to any gratuities they might receive in connection with dances performed on the main stage. Plaintiffs, and with near certainty every Entertainer who would be joined in any Plaintiff Class, each received in excess of $30.00 monthly in such tip income.  Indeed, Plaintiffs would not be representative of any Entertainer who did not.

18.     Entertainers agree to advise the Club(s) of their availability one week in advance, so that provisions for having an adequate number of independent contractor entertainers could be made with adequate foresight from week to week.

19.     Entertainers are and were offered the opportunity to dance during one or both of two shifts on any given evening, from 6:00 p.m. to midnight, or from 9:00 to closing.

20.     EEP, LMI and the Entertainers agree, as part of their contractual understanding, that a fee of $10.00 will be added to the $10.00 nightly house fee of any entertainer who breaches her agreement by arriving late or not at all. In actual practice, however, these fees were and are collected irregularly.

21.     The Entertainers, were and are advised of, and voluntarily agreed to abide by these terms, and were and are given to understand, did and do understand, and further represented that they understood that they were not and are not employees of EEP, LMI or the Club(s), but rather independent contractors whose sole compensation comes from whatever compensation and gratuities are provided by patrons in exchange for dance performances.

21.     The Entertainers, including each of the Plaintiffs, affirmed in writing, that they understood that they were acting as private contractors, and had, or would obtain, a West Virginia business license.

22.     Entertainers, including each of the Plaintiffs, agreed to obtain, and did obtain, West Virginia Business Registration Certificates from the West Virginia State Tax Department as a precondition of being allowed to perform in the Club(s).

23.     At all times relevant hereto, the Entertainers, including each of the Plaintiffs, represented to EEP & LMI that they would perform, and agreed to perform as independent contractors subject to the terms outlined herein, and did so knowingly and willingly.

24.     At all times relevant hereto, the Entertainers, including each of the Plaintiffs, performed in the Club(s), in exchange for compensation they received from patrons.

-16-

25.     At all times relevant hereto, the Entertainers, including each of the Plaintiffs, paid to EEP and/or LMI, through the Club(s), only those agreed-to fees described above.

26.     At all times relevant hereto, the Entertainers, including each of the Plaintiffs, were adults under no legal disability that would impair or restrict their ability to enter freely and knowingly into a contractual relationship with EEP and/or LMI.

27.      The Entertainers, including each of the Plaintiffs, and each of them, freely and knowingly entered into an agreement to perform as independent contractors on the terms described herein and, prior to initiating the captioned action, did so perform.

28.     The Entertainers, including each of the Plaintiffs, enjoyed the freedom to determine; if and when they would provide entertainment at the Club(s); the content and the nature of their own dance performances; the circumstances and occasions on which they would provide private dances performances to patrons, and the fees they would charge patrons for those services above the house imposed minima.

29.     The Entertainers, including each of the Plaintiffs, collected and retained the compensation they received from patrons in exchange for the dances they performed.

30.     On each date, and during each week that the Entertainers, including each of the Plaintiffs, performed, she received compensation for her performances far in excess of what she would have earned at minimum wage had she been an actual employee of EEP and/or LMI.

31.     The Entertainers, including each of the Plaintiffs, adopted patterns and practices of non-employee conduct, including without limitation deciding if, and when they would perform, the content and character of their performances, for whom they would or would not perform private dances, if at all, and the rate at which they would provide private dances, if at all.  They did not perform any job duties or act in any capacity other than as entertainers, nor submit to the sorts of controls and supervision that the EEP and LMI exercised over their true employees.

32.     In sum, by the actions, their agreement and their express representations, the Entertainers, including each of the Plaintiffs, did not seek, but rather eschewed an employer-employee relationship, acknowledged and manifested an intention to enter into, and conduct themselves according to an independent-contractor relationship with the EEP and/or LMI, and did enter into and conduct themselves pursuant to a real and ongoing independent-contractor relationship with the EEP and/or LMI.

33.     At no point did the Entertainers, or any of them, seek, intend to enter, or manifest an intention to seek or enter an employer-employee relationship with the EEP and/or LMI under which they would be compensated at a set hourly wage.

34.     At no point relevant hereto, or before the commencement of this action, did the Entertainers, or any of them, manifest to the EEP or LMI, the desire, intention or claim to be subject to the rights, benefits, obligations, duties, protections or terms of either the FSLA or WPCA, seek minimum wages under either Act, seek overtime compensation under either Act, assert that they were mis-classified as independent contractors, claim that they were due or being wrongfully denied the benefits of employees under either Act, disclaim the financial or other benefits they received as independent contractors, assert that they no longer desired to perform as independent contractors, seek to be treated as employees, or aver that the agreements under which they performed as independent contractors were invalid, or in any way deficient.

35.     The failures to make any of the representations or disclosures set forth above constitute material omissions by the Entertainers, and each of them, regarding the true nature of their business relationships with the EEP and/or LMI.

36.     The Entertainers, including each of the Plaintiffs, materially benefitted from their independent contractors relationship with EEP and/or LMI, but having done so, now seek to deny and repudiate that relationship in order to seek payment of minimum wages and overtime, and avail themselves of the other benefits of the FLSA and WPCA.

37.     Had the Entertainers, including each of the Plaintiffs, been actual employees of the EEP and/or LMI, then EEP and/or LMI would have been entitled to claim the tip credit for any gratuities provided to them by patrons, under either or both the FLSA and/or WPCA.

### First Counterclaim Count - Conversion

38.     EEP and LMI restate as if fully rewritten here each and every averment and allegation set forth in the foregoing paragraphs herein.

39.     Under the Internal Revenue Code, any mandatory charge to a customer or patron collected by and employee constitutes the property, gross receipts and income of the employer, and not of the employee.

40.     If the Entertainers, including the Plaintiffs, were or had been the employees of EEP and/or LMI, than the minimum fees they collected from patrons for providing private table-side, champagne room and shower dances were rightly the property of EEP and/or LMI, by which they were employed, and were never the lawful property of any Entertainer or Plaintiff.

41.     The Entertainers, including the Plaintiffs, have asserted that they were employed by EEP and/or LMI, but have retained for their own use, and not returned, the minimum fees they collected during the time they claim to have been employees.

42.     By keeping for themselves any portion of the fees described in the preceding paragraph, the Entertainers, including the Plaintiffs, and each of them, have converted to their own use the property of the EEP and/or LMI by whom they say they were employed.

43.     In addition, if it is found that the Entertainers, or any of them, were employees of EEP and/or LMI, than EEP and/or LMI would have been, and are required to account for, disclose and claim in filings with the Internal Revenue Service those minimum fees described above as a portion of their own gross revenues, to calculate their business income accordingly, and to undertake the tax withholdings and tax payments on those sums that are required by law.

44.     As a direct and proximate result of this conversion, EEP and/or LMI, and each of them, have been substantially and significantly damaged in an amount to be ascertained prior to and proved at trial.

### SECOND COUNTERCLAIM COUNT - BREACH OF CONTRACT

45.     EEP and LMI restate as if fully rewritten here each and every averment and allegation set forth in the foregoing paragraphs herein.

46.     The Entertainers, including the Plaintiffs, and EEP and/or LMI entered into a contractual relationship under which the Entertainers agreed to provide entertainment services, as described above, solely as independent contractors according to the terms described herein.

47.     In consideration for the promises of those Entertainers, EEP and/or LMI agreed to permit them to present dance performances in the Club(s), to charge patrons fees, and to accept from patrons gratuities in exchange for providing such entertainment on the terms stated herein.

48.     EEP and/or LMI relied reasonably and in good faith, and to their own detriment on the representations and the promises of the Entertainers, including the Plaintiffs, to provide entertainment services as independent contractors on the terms described above.

49.     EEP and/or LMI so relied in structuring their business relationships, in forming and executing their business plan, in planning for, preparing, and paying their taxes, in making withholdings and otherwise.

50.     The Entertainers, including the Plaintiffs, knowingly and purposefully induced EEP and/or LMI to rely upon their promises in this regard, with the intention that they so rely.

51.     EEP and/or LMI at all times and in good faith provided the Entertainers, including the Plaintiffs, with the benefits and opportunities that together comprised the consideration for the contractual relationship which existed between them, and the Entertainers, including the Plaintiffs, achieved and retained the benefit of their bargain with EEP and/or LMI.

52.     By claiming, retroactively, that they were employees, and not properly compensated for the services which they promised to render as independent contractors on the terms set forth above, the Entertainers, including the Plaintiffs, and each of them, have breached their independent contracts with EEP and/or LMI.

53.     As a direct and proximate result of this breach, EEP and/or LMI have suffered substantially and significantly actual and consequential damage in an amount to be ascertained prior to and proved at trial.

### – THIRD COUNTERCLAIM COUNT - FRAUD–

54.     EEP and LMI restate as if fully rewritten here each and every averment and allegation set forth in the foregoing paragraphs herein.

55.     The Entertainers, including the Plaintiffs, entered into independent contractor agreements with EEP and/or LMI through misrepresentations, including misrepresentations that they would provide dance entertainment as independent contractors as described herein, and intended to do so in that capacity, and not as employees pursuant to the FLSA and/or WPCA.

56.     Those representations were central and material to the bargain struck between the Entertainers, including the Plaintiffs on one hand, and EEP and/or LMI on the other, with regard to the subject matter thereof.

-21-

57.   The Entertainers, including the Plaintiffs made misrepresentations regarding their intentions and their status as independent contractors, both through their words, in writing and through their actions, which misrepresentation were actually false, and made knowingly, or were made recklessly without regard for their truth.

58.   The knowingly or recklessly false statements, and the material misrepresentations and/or material omissions of the Entertainers, including the Plaintiffs,  regarding their willingness or intention to perform services as independent contractors, alone or in combination, induced EEP and/or LMI to enter into independent contractor agreements with them, which inured to the benefit of the Entertainers, including the Plaintiffs, by allowing them to obtain the benefits of an independent contractor relationship while avoiding the duties, costs and obligations of an employer-employee relationship.

59.   The Entertainers, including the Plaintiffs, made these statements and misrepresentations in order to so induce EEP and/or LMI, but in fact intended to garner the benefits of independent contractor status before repudiating their agreements and claiming that they were the employees of EEP and/or LMI, and engaged in that repudiation only after having reaped the benefits of being treated as independent contractors, and only after having induced and deceived EEP and/or LMI into acting in ways that would expose them to consequent harm and damages.

60.   Until this Action was filed, EEP and/or LMI were unaware and had no reason to know that the misrepresentations made by the Entertainers, including the Plaintiffs, were false.

61.   EEP and/or LMI relied in good faith upon the misrepresentations made by the Entertainers, including the Plaintiffs, to their own detriment.

62.     As a direct and proximate result of these material misrepresentations, the EEP and LMI have suffered substantially and significantly damages, including general and special damages, in an amount to be ascertained prior to and proved at trial.

– FOURTH COUNTERCLAIM COUNT -
– UNJUST ENRICHMENT & QUANTUM MERUIT –
– AND FOR AN ACCOUNTING –

63.     EEP and LMI restate as if fully rewritten here each and every averment and allegation set forth in the foregoing paragraphs herein.

64.     At all times relevant hereto, EEP and/or LMI have provided to the Entertainers, including the Plaintiffs, and each of them, the benefits and advantages of providing services as independent contractors, and the Entertainers, including the Plaintiffs, have enjoyed those benefits, including the freedom, flexibility and tax advantages of such a relationship.

65.     By treating the Entertainers, including the Plaintiffs, and each of them, as independent contractors pursuant to their agreement with them, EEP and/or LMI have failed to obtain and collect the revenues, including minimum private and semi-private performance fees, generated by the Entertainers, including the Plaintiffs.

66.     Should the Entertainers, including the Plaintiffs, prevail in their claims, they will be substantially and unjustly enriched at the expense of the EEP and/or LMI, either or both of which will be  substantially and unjustly harmed by them.

67.     EEP and/or LMI are accordingly entitled to an accounting and an award of all minimum private and semi-private dance entertainment fees obtained by the Entertainers, including the Plaintiffs, while performing in the Club(s), which have not to date been remitted to them. Internal Revenue Code.

– PRAYER –

**WHEREFORE THE DEFENDANTS, and each of them, having fully Answered the Claims of the Plaintiffs against them, hereby demand judgment against the Plaintiffs, and each of them, as follows:**

    A.    That the Court dismiss each and every Claim asserted by the Plaintiffs, and either of them, with prejudice;

    B.    The that Court award the Defendants, and each of them, their reasonable attorney fees, and costs, and;

    C.    That the Court afford the Defendants such further relief, be it legal or equitable, as the Court in the sound exercise of its discretion deems just;

**AND WHEREFORE EEP AND LMI, having fully stated their Claims against the Plaintiffs as Counterclaimants, hereby demand judgment against the Plaintiffs, and each of them, jointly and severally, as follows:**

    A.    For the return of all private and semi-private performance fees collected by the Plaintiffs not previously remitted to EEP and/or LMI;

    B.    For restitution, including a return of all private and semi-private performance fees, or for set offs against any award of wages, overtime payments, monetary benefits or other accouterments of employment to which the Plaintiffs may be found entitled in this action, of those fees received by the Plaintiffs but not remitted to EEP and/or LMI;

    C.    For such damages as the Court determines are just and equitable;

    D.    For an accounting of all private and semi-private performance fees collected by the Plaintiffs not previously remitted to EEP and/or LMI;

    E.    For an accounting of all gratuities and tips collected or earned by the Plaintiffs, including without limitations for tips and gratuities received in connection with main stage, table-side, shower and private dances performed at the Club(s);

    F.    For interest;

    G.    For reasonable attorneys fees and costs of suit, and;

H.   For such other relief as the Court, in the sound exercise of its discretion, deems just.

Respectfully submitted,

/s/ Harry A. Smith, III
**HARRY A. SMITH, III**
State Bar I.D. No. 3466
McNeer, Highland, McMunn & Varner, L.C.
P.O. Box 1909
Elkins, West Virginia 26241
Telephone: 304.636.3553
Facsimile:  304.636.3607

**J. MICHAEL MURRAY** (Ohio 0019626)[†]
**RAYMOND V. VASVARI, JR.** (Ohio 0055538)[†]
**BERKMAN, GORDON, MURRAY & DEVAN**
55 Public Square Suite 2200
Cleveland, Ohio 44113-1949
Telephone 216.781.5245
Telecopier 216.781.8207

Counsel for Defendants and Counterclaimants

[†]*Subject to Admission Pro Hac Vice Application for Which is Being Made*

-25-

– JURY DEMAND –

Defendants on the one hand, and EEP and LMI as Counterclaimants on the other hand, hereby demand a trial by jury, with the maximum number of jurors allowed by law, on each claim and counterclaim so triable.

Respectfully submitted,

/s/ Harry A. Smith, III
**HARRY A. SMITH, III**
State Bar I.D. No. 3466
McNeer, Highland, McMunn &
    Varner, L.C.
P.O. Box 1909
Elkins, West Virginia 26241
Telephone: 304.636.3553
Facsimile:  304.636.3607


**J. MICHAEL MURRAY** (Ohio 0019626)[†]
**RAYMOND V. VASVARI, JR.** (Ohio 0055538)[†]
**BERKMAN, GORDON, MURRAY & DEVAN**
55 Public Square Suite 2200
Cleveland, Ohio 44113-1949
Telephone 216.781.5245
Telecopier 216.781.8207

Counsel for Defendants and
Counterclaimants

[†]*Subject to Admission Pro Hac Vice*
*Application for Which is Being Made*

-26-