IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**PATRICE RUFFIN, a/k/a "QUEEN,"**

        Plaintiff,

v.                                                                      **Civil Action No. 3:11-CV-19
(BAILEY)**

**ENTERTAINMENT OF THE EASTERN
PANHANDLE, d/b/a THE LEGZS CLUBS, et al.,**

        Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Pending before this Court is the plaintiff's Motion to Dismiss Defendants' Counterclaims [Doc. 35], filed September 28, 2011. The defendants responded on October 31, 2011 [Doc. 42], and the plaintiff replied on November 10, 2011 [Doc. 50]. This Court, having reviewed the motion and the memoranda submitted with regard thereto, finds that the plaintiff's motion should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

In this action, plaintiff Patrice Ruffin a/k/a "Karma" ("Ruffin"), an exotic dancer, has sued her former exotic dance club, Entertainment of the Eastern Panhandle, Inc., d/b/a The Legz Clubs, among others (the "defendants"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and West Virginia Wage Payment and Collection Act ("WPCA"), W.Va. Code § 21-5-1, *et seq.* [Doc. 48]. Regarding the FLSA, Ruffin claims that

though she was treated as an employee, she was not paid a minimum wage.[1] (Id. at ¶¶ 42-49). As relief, Ruffin seeks these unpaid minimum wages. (Id. at 10).

The defendants have asserted the following four counterclaims: (1) conversion, (2) breach of contract, (3) fraud, and (4) unjust enrichment / accounting [Doc. 52]. The claims seek either an offset against any award of wages by the amount of private and semi-private performance fees Ruffin was allowed to keep as a result of electing to be classified as an independent contractor, or the return of those private and semi-private performance fees. (Id. at 26-27). The defendants also seek an accounting of the private and semi-private performance fees retained by Ruffin and the tips collected by Ruffin. (Id. at 27).

On September 28, 2011, Ruffin filed the instant Motion to Dismiss Defendants' Counterclaims [Doc. 35]. Specifically, Ruffin argues that the defendants' counterclaims should be dismissed as improper claims for indemnification or as inappropriately based upon an unlawful waiver of FLSA rights [Doc. 36].

On October 31, 2011, the defendants filed a Response [Doc. 42] in opposition to Ruffin's motion. The defendants argue that their counterclaims do not seek indemnification but merely to prevent Ruffin from receiving a windfall by retaining the private and semi-private performance fees and being awarded a minimum wage. (Id. at 5-10). The defendants also contend that Ruffin's agreement to be classified as an independent contractor did not constitute an unlawful waiver of FLSA rights because her portion of the performance fees never fell below minimum wage. (Id. at 10-12).

On November 10, 2011, Ruffin filed a Reply [Doc. 50], reiterating and supplementing

---

[1] Though irrelevant to the instant motion, Ruffin also claims unlawful retaliation in violation of the FLSA. (Id. at ¶¶ 66-78).

2

her previous argument in support of dismissal. First, Ruffin argues that the defendants are not entitled to the requested set off because those performance fees were tips paid directly to her by patrons. (Id. at 3-4). In addition, Ruffin argues that each counterclaim fails on its merits. (Id. at 4-12).

## DISCUSSION

### I. Applicable Standard

A 12(b)(6) motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56(c) where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). In reaching its decision below, this Court has elected to exclude the Contractor Info Sheet [Doc. 50-1] that Ruffin attached to her Reply, making a summary judgment standard inapplicable to the instant motion. See Fed. R. Civ. P. 12(d).

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true. ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face." ***Bell Atl. Corp. v. Twombly***, 127 S. Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." ***Id.*** (internal quotations and citations omitted). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an

unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements." ***Ashcroft v. Iqbal***, — U.S. —, 129 S. Ct. 1937, 1949 (May 18, 2009) (internal quotations and citations omitted).

## II. <u>Analysis</u>

Ruffin moves to dismiss the defendants' counterclaims for failure to state a claim upon which relief can be granted. Ruffin provides support for dismissal of each count, while the defendants contend that each count should proceed. Below, the Court will first consider those counterclaims arising in contract (express or implied), and then those arising in tort.

### A. Breach of Contract / Unjust Enrichment

The defendants allege that "by [her] actions, [her] agreement and [her] express representations, [Ruffin] did not seek, but rather eschewed an employer-employee relationship, acknowledged and manifested an intention to enter into, and conduct [herself] according to an independent-contractor relationship with [them], and did enter into and conduct [herself] pursuant to a real and ongoing independent-contractor relationship with [them]." ([Doc. 52] at ¶ 32). By claiming, retroactively, that she was an employee, and not properly compensated for the services she promised to render as an independent contractor, the defendants allege that Ruffin has breached her contract. (Id. at ¶ 52). As relief, the defendants seek a return of all private and semi-private performance fees collected by Ruffin not previously remitted to them. (Id. at 26-27).

In the alternative, the defendants allege that they provided Ruffin with "the benefits and advantages of providing services" as an independent contractor including "the freedom,

flexibility and tax advantages of such a relationship." (Id. at ¶ 64). By treating Ruffin as an independent contractor, the defendants allege that they "have failed to obtain and collect the revenues, including minimum private and semi-private performance fees, generated by [Ruffin]." (Id. at ¶ 65). Should Ruffin prevail on her FLSA claim for a minimum wage, the defendants allege that she "will be substantially and unjustly enriched" at their expense. (Id. at ¶ 66). As relief, the defendants seek "restitution, including a return of all private and semi-private performance fees, or for set offs against any award of wages . . .." and an accounting of all private and semi-private performance fees collected by Ruffin and not previously remitted to them and of all gratuities and tips collected or earned by Ruffin. (Id. at 27).

Ruffin presents three bases for dismissal of these claims, namely that: (1) these claims are improper claims for indemnification, (2) these claims are inappropriately based upon an unlawful waiver of FLSA rights, and (3) the defendants have not sufficiently alleged that the performance fees constituted service charges as opposed to tips. Below, this Court will consider each basis before affording separate attention to the defendants' claim for an accounting.

### 1. Improper Claims for Indemnification

First, Ruffin argues that the defendants' counterclaims are in the nature of claims for indemnification, which are not allowed in FLSA actions. For the reasons that follow, however, this Court declines to adopt Ruffin's characterization of the defendants' claims.

"There is no right of contribution or indemnification for employers found liable under the FLSA. The reasons are readily apparent. First the text of the FLSA makes no provision for contribution or indemnification. Second, the statute was designed to regulate

5

the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted. Third, the FLSA has a comprehensive remedial scheme shown by the express provision for private enforcement in certain carefully defined circumstances. Such a comprehensive statute strongly counsels against judicially engrafting additional remedies. Fourth, the Act's legislative history is silent on the right to contribution or indemnification. **Herman v. R.S.R. Security Servs. Ltd.**, 172 F.3d 132, 143 (2d Cir. 1999) (internal quotations and citations omitted).

Based upon the above, the Fourth Circuit has held that an employer may not engraft an indemnity action upon the FLSA. See **Lyle v. Food Lion, Inc.**, 954 F.2d 984, 987 (4th Cir. 1992). In **Lyle**, Food Lion counterclaimed and filed a third-party complaint against a meat market manager on the ground that he breached his contract with Food Lion and his fiduciary duty to the company by violating and allowing an employee under his supervision to violate Food Lion's policy against off-the-clock work. The district court dismissed both the counterclaim and the third-party complaint. In affirming the district court, the Fourth Circuit found dispositive that "[i]n effect, Food Lion sought to indemnify itself against [the manager] for its own violation of the FLSA, which . . . is something the FLSA simply will not allow." **Id.**

Unlike in **Lyle**, however, the defendants here do not suggest that Ruffin shares fault in any potential FLSA violation, as the case would be were they seeking indemnity or contribution. Instead, the defendants are seeking either the return of what they allege are service charges, or at least an offset based upon the retention of those fees by Ruffin. As such, this Court declines to find that the defendants' counterclaims improperly seek

6

indemnification.

### 2. Unlawful Waiver of FLSA Rights

Second, Ruffin argues that the defendants' counterclaims inappropriately rely upon an unlawful waiver of FLSA rights. More specifically, Ruffin claims that she could not have lawfully entered into an agreement with the defendants to waive the minimum wage protections of the FLSA by agreeing to be treated as an independent contractor. For the reasons that follow, this Court declines to adopt Ruffin's characterization of the parties' agreement.

"The right to a minimum wage under the [FLSA] cannot be waived by agreement between the employer and his employee." *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1197 (5th Cir. 1972) (citing *Brooklyn Bank v. O'Neil*, 324 U.S. 697 (1945)). In *Mayhue's*, cashiers agreed to reimburse their employer for any cash register shortages from their paychecks. Finding such an agreement invalid, the Fifth Circuit stated as follows:

> We agree with the Secretary that this agreement tended to shift part of the employer's business expense to the employees and *was illegal to the extent that it reduced an employee's wage below the statutory minimum*. This amounts to nothing more than an agreement to waive the minimum wage requirements of the [FLSA]. Such an agreement is in valid.

*Id.* at 1199 (emphasis added).

Here, however, the defendants allege that "on each date, and during each week that [she] performed, [Ruffin] received compensation for her performances [from the patrons] *far in excess of what she would have earned at minimum wage had she been an actual employee . . . .*" ([Doc. 52] at ¶ 30) (emphasis added). Therefore, this Court declines to find that the parties' agreement, as alleged, constitutes an unlawful waiver of FLSA rights.

### 3.     Service Charges vs. Tips

As a final basis for dismissal, Ruffin argues that the defendants have inadequately pled that the performance fees were service charges as opposed to tips.  This Court disagrees.

"An employer may offset the full amount of a service charge against its minimum wage liability, but may offset up to fifty per cent of all tips received if: (i) the employer has informed the employees of this tip credit provision; and (ii) tipped employees retain all tips received except for those tips included in a tipping pool among employees who customarily receive tips."  **Reich v. ABC/York-Estes Corp.**, 1997 U.S. Dist. LEXIS 6847, *15 (N.D. Ill. May 9, 1997) (citing 29 U.S.C. § 203(m)).  "The implementing regulations for § 203(m) define 'tip' as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.  It is to be distinguished from payment of a charge, if any, made for the service.  Whether a tip is to be given, and its amounts, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity.  In the absence of an agreement to the contrary between the recipient and a third party, a tip becomes the property of the person in recognition of whose service it is presented by the customer . . ..

*Id.* at *15-16 (quoting 29 C.F.R. § 531.52).  "The regulations also provide examples of compensation which is and which is not considered to be a 'tip' and, in doing so, distinguishes between a 'service charge' and a 'tip.'"  *Id.* at *16 (citing 29 C.F.R. 531.55(a) and (b)).  "In this regard, the regulations explain that:

> (a) A compulsory charge for service, such as 10 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to his employees, cannot be counted as a tip received in applying the provision of [29 U.S.C. §§ 203(m) and (t)] . . ..
>
> (b) As stated above, *service charges* and other similar sums *which become*

> *part of the employer's gross receipts* are not tips for the purposes of the Act. However, where such sums are distributed by the employer to his employees, they may be used in their entirety to satisfy the monetary requirements of the Act . . ..

*Id.* at *16-17 (quoting 29 C.F.R. § 531.55(a) and (b)) (emphasis in original). Based upon the above, the court in **Reich** held that "an employer must include payments in its records as gross receipts as a prerequisite to 'service charge' classification under the FLSA." *Id.* at *17.

Here, the defendants allege that "as part of their agreement with [Ruffin], [they] set a standard, minimum fee, which [was] the least [Ruffin] [could] charge for providing a private or semi-private dance to patrons." ([Doc. 52] at ¶ 15). More specifically, the defendants allege that Ruffin was "free to charge any fee she desire[d] for a private or semi-private dance, so long as it me[t] the minimum," including $30 for a table-dance, $100 for a shower dance, and $150 for a champagne dance. (Id. at ¶ 16). According to the defendants, Ruffin would then pay a portion of those fees to the defendants, e.g., $30 of the $100 charged for a shower dance. (Id.). Finally, the defendants allege that "in addition to any fees [Ruffin] might [have] receive[d] directly from patrons for these private and semi-private performances, [she] also receive[d] gratuities above and beyond their set fees." (Id. at ¶ 17). Considering these allegations in their most favorable light, this Court finds that the defendants have adequately pled that the performance fees constituted service charges in order to survive a 12(b)(6) motion.

Based upon the above, this Court concludes that the defendants have sufficiently pled alternative claims for breach of contract and unjust enrichment. However, this Court finds that an offset, as opposed to a return of the performance fees, is the more appropriate

remedy under the FLSA. See 29 U.S.C. § 203(m). Accordingly, Count II (Breach of Contract) and Count IV (Unjust Enrichment) **MAY PROCEED** to the extent that they seek an offset of performance fees against any award of minimum wages, assuming the defendants can prove that those performance fees constituted service charges as opposed to tips.

### 4. Accounting

The defendants also seek an accounting of all private and semi-private performance fees collected by Ruffin and not previously remitted to them and of all gratuities and tips collected or earned by Ruffin. ([Doc. 52] at 27). Ruffin argues that the accounting, as requested, is unwarranted. This Court agrees.

"An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." ***Doe v. Cin-Lan, Inc.***, 2010 WL 726710, *8 (E.D. Mich. Feb. 24, 2010) (quoting ***King v. Bank of Am. Corp.***, 2009 WL 2960425, *2 (E.D. Mich. Sept. 11, 2009).

In the instant case, the defendants have failed to allege facts demonstrating why an accounting, as opposed to ordinary discovery devices, is necessary. Thus, the defendants have failed to allege a plausible claim for accounting. Accordingly, Count IV (Unjust Enrichment) is **DISMISSED** to the extent that it requests an accounting.

### B. Conversion

The defendants allege that "[u]nder the Internal Revenue Code, any mandatory charge to a customer or patron collected by and [sic] employee constitutes the property, gross receipts and income of the employer, and not of the employee." ([Doc. 52] at ¶ 39). As such, the defendants allege that "[b]y keeping for [herself] any portion of the [performance] fees . . . [Ruffin] ha[s] converted to [her] own use [their] property . . .." (Id.

at ¶ 42).

In her motion, Ruffin argues that there could have been no conversion because it was the defendants' policy to allow the dancers to keep the performance fees after paying the defendants their agreed-upon portion. This Court agrees.

In West Virginia, "[i]t has been generally recognized that where one assents to, or ratifies, another's taking of his personal property, conversion does not occur." **Henry v. Wilson Ford, Inc.**, 184 W.Va. 160, 164, 399 S.E.2d 871, 875 (1990). At the time Ruffin collected the performance fees, which is the only relevant time period for the purposes of analyzing the sufficiency of a claim for conversion, the defendants freely permitted Ruffin to retain those fees. Perhaps more significantly, the defendants considered the fees to be Ruffin's property. As such, the defendants cannot state a plausible claim for conversion. Accordingly, Count I (Conversion) is **DISMISSED**.

### C.     Fraud

The defendants allege that Ruffin entered into an independent contract agreement with them through knowingly or recklessly false statements, including a material misrepresentation that she would provide dance entertainment as an independent contractor, not as an employee. ([Doc. 55] at ¶¶ 55-58). In fact, the defendants allege, Ruffin "intended to garner the benefits of independent contractor status" before repudiating her agreement and claiming that she was an employee. (Id. at ¶ 59). Finally, the defendants allege that by entering into the agreement with Ruffin, they relied in good faith upon her misrepresentations to their own detriment. (Id. at ¶ 61).

With these allegations, the defendants appear to suggest that Ruffin shares fault in any potential FLSA violation because she misrepresented that she would be performing as

an independent contractor as opposed to an employee, a difference in status that depends in large part on the defendants' treatment of Ruffin subsequent to her commencement of work. As such, this claim improperly seeks indemnification or contribution for the defendants' potential violation of the FLSA. See **Lyle**, 954 F.2d at 987. Accordingly, Count III (Fraud) is **DISMISSED**.

## CONCLUSION

For the reasons stated above, this Court finds that the plaintiffs' Motion to Dismiss Defendants' Counterclaims **[Doc. 35]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: November 23, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE