IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**PATRICE RUFFIN, a/k/a "KARMA,"**

        Plaintiff,

v.                                                        Civil Action No. 3:11-CV-19
                                                                 (BAILEY)

**ENTERTAINMENT OF THE EASTERN
PANHANDLE, d/b/a THE LEGZS CLUBS, et al.,**

        Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR RECONSIDERATION

Pending before this Court is the defendants' Motion for Reconsideration [Doc. 76], filed March 19, 2012. The plaintiff responded on April 5, 2012 [Doc. 78]. The defendants did not reply. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the motion should be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

In this action, plaintiff Patrice Ruffin a/k/a "Karma" ("Ruffin"), an exotic dancer, has sued her former exotic dance club, Entertainment of the Eastern Panhandle, Inc., d/b/a The Legz Clubs, among others (the "defendants"), for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and West Virginia Wage Payment and Collection Act ("WPCA"), W.Va. Code § 21-5-1, *et seq.* [Doc. 48]. Regarding the FLSA, Ruffin claims that though she was treated as an employee, she was not paid a minimum wage.

1

On November 23, 2011, this Court entered an Order Granting in Part and Denying in Part Plaintiff's Motion to Dismiss Defendants' Counterclaims [Doc. 53]. In that Order, this Court allowed to proceed the defendants' claims for breach of contract and unjust enrichment "to the extent that they seek an offset of performance fees against any award of minimum wages, assuming the defendants can prove that those performance fees constituted service charges as opposed to tips." (Id. at 10).

At a status conference held December 16, 2011, this Court inquired as to the effect of a potential setoff on the plaintiff's minimum wage claim brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Counsel agreed that a setoff could have an impact on the viability of the FLSA claim. As a result, the Court concluded that the setoff issue should be decided prior to any determination of whether an FLSA collective action should be conditionally certified. Accordingly, upon the suggestion of Ruffin's counsel, the Court directed that the issue be briefed. Consequently, the parties filed cross motions for summary judgment on the setoff issue [Docs. 65 & 71].

In granting Ruffin summary judgment, this Court first outlined the undisputed material facts:

> The uncontroverted evidence presented by the parties discloses that the defendants treated their exotic dancers as independent contractors and had them execute crude agreements wherein the dancers agreed to such an arrangement. The defendants paid no wages to the dancers. The defendants set minimum fees for various types of activity, as follows:
>> for private dances at $30.00 for a table side dance, $100.00 for a shower dance, and $150.00 for a champagne dance
>
> The dancers were allowed to charge whatever amount they desired for the above activities, so long as the amount equaled or exceeded the

2

> minimum set by the defendants. The defendants then required that each dancer pay a portion of the amount recovered to the defendants, as follows: "$10 for each table-side dance, $30.00 for each shower dance, and $75.00 for each Champagne Room dance."
>
> The dancers retained the balance of amounts that they received for private dances.

([Doc. 73] at 2). Next, this Court identified *Doe v. Cin-Lan, Inc.*, 2010 WL 726710 (E.D. Mich. Feb. 24, 2010) as "the most analogous and persuasive authority" on the FLSA setoff issue, outlined its relevant facts, and applied its logic:

> Based upon the logic of *Cin-Lan*, this Court finds that were this Court to hold that the plaintiff is an employee and entitled to the minimum wage, the defendant would likely be entitled to a set off or credit for that portion of the mandatory minimum dance fees which she retained. This Court, as the Court in *Cin-Lan* does not accept the plaintiff's argument that the fees had to enter [the defendants'] gross receipts.
>
> The fly in the ointment for the defendants, however is the fact that, unlike Cin-Lan, they kept no records of the amounts paid to them as a result of the plaintiff's efforts. Since the defendants bear the burden of proving the amount of the mandatory minimum dance fees retained by the plaintiff, their claim fails, not from the lack of entitlement, but from the lack of adequate records.

(Id. at 3-5). Accordingly, this Court granted Ruffin summary judgment on the defendants' counterclaims. (Id. at 5). The same day, this Court granted conditional certification and ordered Ruffin to submit a revised proposed notice without the need of any mention of the defendants' counterclaims [Doc. 74]. On March 15, 2012, Ruffin submitted a Revised Collective Action Notice [Doc. 75-1] and a Revised Return Consent to Join Lawsuit Card

[Doc. 75-2].

On March 19, 2012, the defendants filed the instant Motion for Reconsideration [Doc. 76] asking this Court to "reconsider its Orders granting summary judgment against [their] counterclaims for breach of contract and unjust enrichment, as to potential opt-in plaintiffs only (Docket No. 73), and permitting the opt-in notice to be sent to potential plaintiffs to omit any reference to those counterclaims (Docket No. 74)." ([Doc. 76] at 1). In other words, the defendants "move for an Order permitting those counterclaims to proceed against any opt-in plaintiff for whom records exist to support the set-offs the Defendants claim, and further move that the requirements for the notice to be sent to putative opt-in plaintiffs be amended accordingly." (Id.). In support of their request, the defendants first highlight that this Court based its decision to grant summary judgment on their counterclaims "not from the lack of entitlement [to a setoff], but from the lack of adequate records." (Id. at 2). Next, the defendants allege that, after entry of this Court's Orders, they discovered "considerable documentation regarding the number and the sort of private dances performed by numerous adult entertainers at the clubs they operate, going back in some cases to July 2009." (Id. at 3). The defendants describe the discovery and content of this documentation as follows:

> During the week of March 4, 2012, the Defendants uncovered a large additional quantity of documents – including Daily [Cash] Sheets and Private Dance Records from the cabarets in Ridgeley and Martinsburg, and the cabaret once located in Morgantown. Those records, which were presumed to have been lost or destroyed, were discovered quite by surprise. The documents in question were found inside a filing cabinet and a box, that were in turn located within a forty-eight foot Conex trailer being used as a storage

> shed adjacent to Legz Martinsburg.
>
> . . .
>
> Fixtures, furniture and kitchen equipment from three nightclubs and two pizza restaurants were stored in the Conex trailer. [The defendants' principal] found the documents in question while searching the storage trailer for idle equipment he could sell at auction to raise money to defend the captioned action.
>
> The records in question include Daily [Cash] Sheets for the Legz Club in Martinsburg (24 months of data), additional Daily [Cash] Sheets for Legz Gold in Ridgeley (12 months), and Daily [Cash] Sheets for the now-closed Legz Morgantown (31 months). They also include Private Dance Sheets for Martinsburg (14 months) and Morgantown (23 months), as well as a handful of additional Private Dance Sheets for Ridgeley. These records were sent to counsel for the Plaintiff on March 16, 2012, as soon after their receipt by undersigned counsel as they could be sorted, evaluated and copied.

(Id. at 5-6) (footnotes omitted). The defendants previously explained that Daily Cash Sheets were "used in all [their] cabarets to track a variety of information, including which dancers performed on a given night," were "completed nightly, usually by a manager or bartender," and were "retained until the data they contained was put on a spreadsheet for the benefit of an outside accountant." (Id. at 4). Likewise, the defendants explained that Private Dance Sheets "documented the number and types of private dances performed on any given day, and who performed them," and that "those dancers initialed the entries recording every such transaction of the three clubs." (Id.).

On April 5, 2012, Ruffin filed a Response [Doc. 78] opposing reconsideration. First, Ruffin questions the defendants' alleged discovery of new evidence as "strategically convenient, at best," and argues that due diligence on the defendants' part would have

uncovered the documents in question. Second, Ruffin contends that the new evidence is inadmissible hearsay. Finally, Ruffin argues that the new evidence should not change this Court's rulings.

The defendants did not reply.

## DISCUSSION

### I. Applicable Standard

Pursuant to Federal Rule 54(b) of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of judgment adjudicating all the claims." Thus, Rule 54(b) empowers a district court to "amend interlocutory orders to achieve complete justice." **Shrewsbury v. Cyprus Kanawha Corp.**, 183 F.R.D. 492, 493 (S.D. W.Va. 1998) (citing **Fayetteville Investors v. Commercial Builders, Inc.**, 936 F.2d 1462, 1469 (4th Cir. 1991)). In reviewing a motion under Rule 54(b), a district court is "guided by the general principals" of Rule 59(e). **Id.** "There are three circumstances in which the district court can grant a Rule 59(e) motion: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." **United States ex rel. Becker v. Westinghouse Savannah River Co.,** 305 F.3d 284, 290 (4th Cir. 2002) (quoting **Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.**, 148 F.3d 396, 403 (4th Cir. 1998)). However, this three-part test is "not applied with the same force" when analyzing an interlocutory order. **Beyond Sys., Inc. v. Kraft Foods, Inc.**, 2010 WL 3059344, *2 (D. Md. Aug. 4, 2010) (citing **Am. Canoe Assn. Inc. v. Murphy Farms, Inc.**, 326 F.3d 505, 514 (4th Cir. 2003)).

## II.     Analysis

The defendants seek the entry of an Order reconsidering this Court's March 7, 2012, Order Regarding Claimed Set-Offs [Doc. 73] and Order Granting in Part and Denying in Part Plaintiff's Motion to Facilitate Identification and Notification of Similarly Situated Employees [Doc. 74].  In support of their motion, the defendants neither identify an intervening change in controlling law, nor contend that this Court committed a clear error of law.  Instead, the defendants present evidence which they assert was not available at the time of disposition, e.g., the Daily Cash Sheets and Private Dance Sheets.  Below, this Court will consider the effect of this evidence on each of the Court's rulings.

### A.     Order Regarding Claimed Set-Offs

The defendants argue that the Daily Cash Sheets and Private Dance Sheets discovered during the week of March 4, 2012, remedy the "lack of adequate records" identified by this Court as the sole deficiency precluding the defendants from receiving a setoff.  This Court agrees.

To secure a Rule 54(b) reconsideration based upon newly discovered evidence, the movant must make four showings, namely: (1) that the evidence is of facts existing at the time of disposition, (2) that the movant was excusably ignorant of the facts despite using due diligence to learn about them, (3) that the evidence is admissible, and (4) that the evidence produces a different result.  *See generally* **Randolph v. ADT Security Servs., Inc.**, 2012 WL 273722 (D. Md. Jan. 30, 2012).  This Court will consider each element in turn.

### 1.     Evidence of Facts Existing at Time of Disposition

Ruffin does not dispute that the Daily Cash Sheets and Private Dance Sheets discovered during the week of March 4, 2012, existed on March 7, 2012, when this Court entered the two Orders for which the defendants seek reconsideration. Accordingly, the first element is satisfied.

### 2.     Excusable Ignorance Despite Due Diligence

Ruffin argues that the Daily Cash Sheets and Private Dance Sheets "were in Defendants' sole possession at all times" and that "[e]ven the basic due diligence on Defendants' part would have uncovered the documents in question at the time [her] document requests were made [in August and November 2011]." ([Doc. 78] at 4). This Court disagrees.

This Court cannot find that the defendants' failure to discover the documents in question was the result of a lack of due diligence. According to the uncontroverted sworn testimony of the defendants' principal, (1) the documents were found during the week of March 4, 2012, in a box, in a filing cabinet, in a trailer next to the defendants' Martinsburg cabaret; (2) the trailer contained fixtures, furniture, and kitchen equipment; and (3) he only entered the trailer to search for items to auction for legal fees. In addition, the defendants represent that they had no policy regarding the retention of the documents found. Ruffin does not attempt to dispute these representations, instead challenging the discovery as "strategically convenient, at best." ([Doc. 78] at 4). Based upon these undisputed facts, this Court finds that the defendants' failure to present the documents in question prior to disposition is excusable. Accordingly, the second element is satisfied.

### 3. Admissible Evidence

Ruffin challenges the admissibility of the Daily Cash Sheets and Private Dance Sheets, arguing that they are hearsay and do not fall within the business records exception contained in Federal Rule of Evidence 803(6).

The business records exception provides that the following is not excluded by the rule against hearsay:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make that memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness . . . unless the source of the information or the method or the circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

Here, Ruffin argues that the business records exception is inapplicable because the defendants admit that "[they] had no policy regarding the retention of those records, prior to this litigation, because they did not believe the information contained in the records was useful after it was summarized for their accountant." ([Doc. 78] at 7) (quoting [Doc. 76] at 5).  This Court is unpersuaded.

Ruffin conflates the defendants' statement that they had no policy regarding the *retention* of the Daily Cash Sheets and Private Dance Sheets with a statement that those documents were not kept in the course of a regularly conducted business activity and that it was the regular practice of that business activity to make those documents.  Obviously,

the documents in question were retained or they would not be attached to the defendants' motion. More importantly, the principal of the defendants testified at his deposition that the Daily Cash Sheets and the Private Dance Sheets were kept in the course of their business and that it was their regular practice to make those documents. (See Ericson Depo. at 19-20, 30-31, & 65-66). Accordingly, the third element is satisfied.

### 4. Evidence Produces Different Result

Ruffin contends that the Daily Cash Sheets and Private Dance Sheets should not produce a different result for two primary reasons, namely: (1) the documents are insufficiently specific, identifying the entertainers only by their stage names or barely-legible initials and (2) the documents do not track the money the entertainers received from private dances, only the money the clubs received.[1] This Court is unconvinced by either argument.

First, on March 21, 2012, the defendants disclosed to Ruffin the identifying information for every exotic dancer for whom they possessed such information [Doc. 77]. That information included the name and/or stage name of over 150 dancers. As such, this Court is unpersuaded that the Daily Cash Sheets and Private Dance Sheets are rendered immaterial or lack probative value because they contain only the stage names of the entertainers.

Second, Ruffin does not dispute that the defendants set minimum fees for the various types of dances offered ($30.00 for a table side dance, $100.00 for a shower dance, and $150.00 for a champagne dance). Taken in conjunction with the undisputed

---

[1]Ruffin also attempts to reargue that the defendants are not entitled to a setoff as a matter of law. However, relitigating decided issues of law is not proper on a Rule 54(b) motion for reconsideration nor in opposing such a motion. See 11 Charles Allen Wright et al., ***Federal Practice and Procedure*** § 2810.1, at 127-28 (2d ed. 1995).

existence of those standard fees, therefore, this Court is unpersuaded that the Daily Cash Sheets and Private Dance Sheets lack probative value. Accordingly, the fourth and final element is satisfied.

For these reasons, this Court hereby **REINSTATES** the defendants' counterclaims for breach of contract and unjust enrichment to the extent that they seek an offset of performance fees against any award of minimum wages.

### B. Order Granting in Part and Denying in Part Plaintiff's Motion to Facilitate Identification and Notification of Similarly Situated Employees

The defendants also argue that this Court should reconsider its decision not to require the Notice to reference their counterclaims. Specifically, the defendants propose two additional paragraphs for inclusion in the Notice. First, the defendants argue that the following paragraph should be added to Section II:

> The Defendants have claimed that many exotic dancers were permitted to share in the minimum fees patrons of the Defendant nightclubs paid dancers in exchange for certain private dancers. The Defendants have claimed that it would be a breach of contract, and unjustly enrich those dancers if the dancers were awarded a minimum wage and permitted to keep their share of those fees. If the Plaintiff wins, the Court will allow the Defendants to reduce the minimum wage payment owed to any dancer by the amount of minimum fees which the Defendants can show that she earned for performing private dances at that club.

([Doc. 76] at 7-8). In addition, the defendants propose that Ruffin add a Subpart (5) to Section IV that reads as follows:

> You may be required to disclose information regarding your income. If it is found that you earned private dance fees at the club, any award of unpaid

minimum wages you are found to be due may be offset by the amount of fees that you earned. This may reduce your total award to zero, but in no event will you be required to pay money to the Defendants, even if your fee income exceeds the minimum wage payment owed to you.

(Id. at 8).

Upon careful consideration, this Court concludes that neither proposed addition to the Notice is appropriate. First, this Court notes that in every case a plaintiff faces the possibility that he or she will not be awarded any damages. That the defendants' counterclaims are the vehicles here that could preclude recovery is not significant. Second, this Court observes that uncertainty still exists as to which entertainers the defendants have adequate records to support their counterclaims. Therefore, the very limited value of requiring reference to the defendants' counterclaims in the Notice is outweighed by the potential chilling effect it could cause for putative plaintiffs asked to decide whether to join this collective action. As such, this Court will not require any additions to the Notice. Accordingly, the Notice **[Doc. 75-1]** and the Consent to Join Lawsuit Card **[Doc. 75-2]** are hereby **APPROVED** for distribution to potential collective action class members.

## CONCLUSION

For the foregoing reasons, the Court finds that the defendants' Motion for Reconsideration **[Doc. 76]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** April 25, 2011.

JOHN PRESTON BAILEY<br>
UNITED STATES DISTRICT JUDGE